UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ELIZABETH GRAHAM,

                Plaintiff,                          **MEMORANDUM & ORDER**

       - against -                                   16-CV-6468 (PKC) (LB)

GOODWILL INDUSTRIES INC.

                Defendant.
---------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Plaintiff Elizabeth Graham, appearing *pro se* and proceeding *in forma pauperis*, brings this action against Defendant Goodwill Industries of Greater New York and Northern New Jersey, Inc. ("Defendant" and "Goodwill"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified, 42 U.S.C. Sections 2000e *et. seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, the New York Human Rights Law ("NYHRL"), N.Y. Exec. L. § 290 *et. seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et. seq.* In her original complaint, Plaintiff alleged that she was subjected to a hostile work environment, sexual harassment, discrimination, and retaliation while employed by Defendant in 2014 and 2015. The Court also construes Plaintiff's opposition motion as amending her original complaint to add new claims under Title VII and the ADA. For the reasons stated herein, the Court grants Defendant's motion to dismiss the complaint, as amended.

## BACKGROUND

I.  **Relevant Facts[1]**

Plaintiff worked for Defendant Goodwill from September 30, 2013 to November 2, 2015 as an Employment Support Specialist referring people with mental health disabilities to job opportunities. (Complaint ("Compl."), Dkt. 1, at 4.) Plaintiff alleges that she had difficulties with an unnamed male co-worker ("co-worker"). (*Id.*) The co-worker allegedly "refer[ed] the clients to fictitious employment opportunities." (*Id.*) Plaintiff claims that her co-worker's actions "distressed" the clients participating in the program and that Plaintiff repeatedly complained to her supervisor about the co-worker's job performance. (*Id.*) When Plaintiff reported the co-worker's actions, he responded by refusing to communicate with Plaintiff and program participants, which resulted in the clients "direct[ing] their anger and concern at plaintiff," instead of the co-worker. (*Id.*) The clients' complaints about the co-worker allegedly "caused the Plaintiff secondary trauma," which "manifested itself in frequent headaches, insomnia and panic attacks." (*Id.*) Plaintiff claims that she participated in three therapy sessions to address this issue. (*Id.*) Plaintiff states that she asked to be "reassigned" from the "emotionally hazardous work environment" caused by her co-worker's bad behavior and poor job performance. (*Id.*)

Plaintiff alleges that she stopped making complaints because "the unethical behavior still continued and the depression got worst [sic]." (*Id*. at 5.) Plaintiff claims that the co-worker found out about her mental health issues from her supervisor, who was also the landlord for the co-worker's girlfriend. (*Id.*) The co-worker made "disparaging comments" to Plaintiff about her

---

[1] Because this is a motion to dismiss, the Court accepts as true the facts alleged in the original complaint, as well as in Plaintiff's opposition, which the Court has liberally construed as amending the original complaint. *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

mental issues. (*Id.*) According to Plaintiff, "the combination of the situations caused [her] to have a breakdown in May 2015 and [she] received 1 week of FMLA" leave. (*Id.*)

Plaintiff also alleges that she was "groped by one of the program participants on September 11, 2014." (*Id.* at 4.) More specifically, she claims that the participant "put his hand on the small of [her] back." (*Id.*) Plaintiff states that she "e-mailed a description of the incident to the Director of the program for the participant as well as a copy to [her] direct supervisor." (*Id.*) The program participant taunted Plaintiff "a few times" in the wake of the encounter, which Plaintiff also reported to her supervisor. Plaintiff states that she reacted "so strongly" to the situation because she is a childhood survivor of sexual assault and experienced a few "flashbacks" thereafter. (*Id.*) Plaintiff said she felt unsafe being alone in the office and going to the restroom. (*Id.*)

Defendant offered Plaintiff a different position as an Employment Support Coordinator in a new program with a start date of August 31, 2015. (*Id.* at 5.) Plaintiff's co-worker was terminated on or about September 30, 2015. (*Id.*) Plaintiff stated in her complaint that her new job and the firing of her co-worker "appeared to be a suitable resolution." (*Id.*) Plaintiff also alleges that she was promised an increase in pay that was delayed, but she does not attribute this delay to sex or disability discrimination. (*Id.*) Plaintiff resigned from her employment on or about November 2, 2015, before the pay increase went into effect. (*Id.* at 4-5.) Plaintiff claims that she resigned due to Defendant's "prior gross negligence," as well as the "selective honored pay agreements." (*Id.* at 5.)

On November 13, 2015, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYSDHR"), alleging that Defendant had failed to accommodate her claimed disability and that she had been sexually harassed by a disabled program participant. (NYSDHR Determination, Dkt. 14-1, at 1.) In its May 23, 2016 Determination, the NYSDHR

3

dismissed Plaintiff's claims. (*Id.* at 4.) Plaintiff was notified that she had 60 days to appeal the NYSDHR Determination dismissing her claims by filing a Notice and Petition in New York State Supreme Court. (*Id.*) Plaintiff did not do so.

On June 6, 2016, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") for workplace discrimination. The EEOC issued a Notice of Right to Sue letter on August 17, 2016 based on the same claims addressed in the NYSDHR Determination. (EEOC Notice of Right to Suit Letter, Dkt. 17-2, at 2.)

**II.     Procedural History**

Plaintiff filed her complaint in this action on November 17, 2016, alleging hostile work environment, sexual harassment, discrimination, and retaliation, pursuant to Title VII, ADA, NYHRL, and NYCHRL. Plaintiff seeks to recover: "(1) retroactive promotion to the Employment Support Coordinator position, with all attendant back pay [and] benefits; (2) other emoluments of employment; (3) $300,000.00 in compensatory damages suffered because of the gross negligence; (4) $150,000.00 in punitive damages; (5) front pay at the Employment Support Coordinator pay level (including pay increases) for a year; (f) costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and (g) other damages and further relief as deemed just." (Compl., at 6.)

On June 1, 2017, Defendant moved to dismiss the complaint in its entirety. (Dkts. 12, 18.) In her opposition to the motion, Plaintiff raised new claims under Title VII and the ADA, which are not part of her amended complaint. As discussed below, the Court construes Plaintiff's opposition as amending her complaint and addresses her new claims.

**STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

"In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein*, 708 F.3d 82 at 94. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). At the same time, pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

**DISCUSSION**

I.  **Plaintiff's Federal Law Claims Must Be Dismissed**

   A.  **Plaintiff's Title VII Claim is Time-Barred**

In New York, a plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e). Plaintiff filed her complaints with the EEOC and NYSDHR on November 15, 2015. Counting backward, the alleged discriminatory acts would had to have taken place on or prior to January 19, 2015.

Plaintiff alleges that she was "groped by one of the program participants on September 11, 2014." (Compl., at 3.) Plaintiff does not allege any further sexual harassment after this date or during the limitations period, *i.e.*, after January 19, 2015. Plaintiff cites case law regarding the continuing violations doctrine, but she does not allege that any sexual harassment continued into the limitations period. (Plaintiff's Opposition ("Pl. Opp'n"), Dkt. 16, at 10.) Because the only alleged act of sexual harassment occurred before January 19, 2015, Plaintiff's sexual harassment claim is time-barred. *Garland–Sash v. City of New York*, 04-CV-0301, 2005 WL 2133592, at *3 (E.D.N.Y. Sept. 1, 2005) ("[S]tatutes of limitations are strictly enforced, even where the plaintiff is pro se.") (quotation marks and citation omitted).

By contrast, Plaintiff's ADA claim is not time-barred. Plaintiff alleges that Defendant violated the ADA by failing to accommodate her disability when the actions of a co-worker caused her to suffer "frequent headaches, insomnia and panic attack." (Compl., at 4.) Plaintiff claims that her co-worker's "unethical behavior" led her to have a "nervous breakdown" and take FMLA leave on May 1, 2015. (*Id.*) Liberally construing the original complaint, the Court finds that Plaintiff's ADA claim is not barred by the statute of limitations because at least some of the alleged failure to accommodate occurred after January 19, 2015 and thus during the limitations period. However, as discussed below, Plaintiff's ADA claim fails for other reasons.

6

## B. Plaintiff's Original Complaint Fails to State a Claim under the ADA

To prove a claim for failure to accommodate under the ADA, a plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) an employer subject to the ADA had notice of her disability; (3) she could perform the essential functions of her job with reasonable accommodations; and (4) her employer refused to make such accommodations. *Liss v. Nassau Cty.*, 425 F. Supp. 2d 335, 340 (E.D.N.Y. 2006). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Even assuming *arguendo* that Plaintiff's original complaint sufficiently alleges the first prong of an ADA claim—namely, that Plaintiff was disabled within the meaning of the ADA[2]— it fails to allege that Defendant refused to accommodate her claimed disability. Indeed, Plaintiff concedes that Defendant accommodated her by granting her a leave of absence in May 2015 and offering her a position in a new program. (Compl., at 4; Pl. Opp'n, at 8.) Plaintiff also confirms that the co-worker who was allegedly causing her distress was laid off around September 30, 2015. (Pl. Opp'n, at 8.) Notably, in her complaint, Plaintiff characterizes her new job, away from the influence of her co-worker, as a "suitable resolution." (Compl., at 5.) These allegations preclude

---

[2] In fact, it is doubtful that Plaintiff could sufficiently allege this element, given that her claimed disability or exacerbation of a disability is based on alleged friction with her co-worker. *Adams v. New York State Thruway Auth.*, 97-CV-1909, 2001 WL 874785, at *8-9 (N.D.N.Y. Mar. 22, 2001) (holding that "personality conflicts or an inability to work under certain supervisors, however, do not rise to the level of a disability under the Rehabilitation Act," and that case law applicable to ADA is applicable to Rehabilitation Act); *Potter v. Xerox Corp.*, 88 F. Supp. 2d 109, 112, 114 (W.D.N.Y. 2000) (finding that inability to work with a particular person is not a disability under ADA and noting that no employer is obligated to provide an employee "with a completely stress-free environment").

any inference that Defendant failed or refused to accommodate Plaintiff's alleged disability and thus require the dismissal of her original ADA claim.

### C. Plaintiff's New Allegations Do Not Save Her Title VII or ADA Claims

In Plaintiff's opposition papers, she makes new allegations of a hostile work environment and retaliation, based on a mental disability, under Title VII and the ADA that she did not plead in her original complaint. (*See* Pl. Opp'n, at 2-3, 6.) She alleges that her workplace was "permeated with discriminatory comments against individuals with mental health conditions that was sufficiently pervasive to alter the conditions [of] Plaintiff's work environment." (*Id.* at 6.) She also argues that she was retaliated against for "whistleblowing" when she reported that her co-worker engaged in "unethical" behavior by referring a client to a "fraudulent" employment position. (*Id.* at 2-3, 6.)

Given Plaintiff's *pro se* status, the Court allows her to amend the original complaint through her opposition papers. *See Pullman v. Alpha Media Publ'g, Inc.*, 12–CV–1924 (PAC)(SN), 2013 WL 1290409, at *6 (S.D.N.Y. Jan. 11, 2013) (permitting *pro se* plaintiff to raise claim for the first time in opposition submission, noting that "[w]hile a counseled plaintiff may not make allegations in an opposition to a motion to dismiss that do not appear in the complaint, *pro se* pleadings are held to a less stringent standard[] than formal pleadings drafted by lawyers.") (internal quotations omitted); *Alexander v. Coughlin*, 90-CV-3231 (RR), 1991 WL 150674, at *1 (E.D.N.Y. July 26, 1991) ("[S]ince plaintiff proceeds *pro se*, the court deems his original complaint amended to include factual allegations asserted in his 'Motion in Opposition to Dismiss Complaint.'").

Even with her new allegations, Plaintiff still fails to state a Title VII or ADA claim of a hostile workplace. Title VII and ADA hostile work environment claims are evaluated under the same standards. *Disanto v. McGraw–Hill, Inc./Platt's Div.*, 97-CV-1090, 1998 WL 474136, at *5

(S.D.N.Y. Aug. 10, 1998). To establish a hostile work environment under Title VII, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of NY*, 795 F.3d 297, 320-321 (2d Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Here, Plaintiff merely alleges that unnamed co-workers made unspecified comments and jokes about the clients served by her department who had "mental health diagnoses" and that an unnamed person once told a former client, later hired as an employee, "I know you are crazy." (Pl. Opp'n, at. 5-6.) Plaintiff neither alleges that these comments were directed at her, nor provides any details about the nature of the comments, who made them, or how often they were made. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *Dechberry v. NYC. Fire Dep't*, 124 F. Supp. 3d 131, 158 (E.D.N.Y. 2015) (finding plaintiff's conclusory allegations that she suffered "disrespectful treatment, retaliation and harassment" insufficient to plead hostile work environment claim). Thus, the Court finds that Plaintiff's conclusory and vague allegations of offhand comments by unnamed individuals under unspecified circumstances (*e.g.*, time and place) fail to state a hostile work environment claim under either Title VII or the ADA.

Plaintiff's second new claim from her opposition papers is that she suffered retaliation under Title VII and the ADA. The Second Circuit has held that "it is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA." *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2nd Cir. 1999). To establish a prima facie retaliation claim under Title VII, a plaintiff must allege (1)

9

participation in a protected activity, (2) the defendant's knowledge of the protected activity, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *See Littlejohn*, 795 F.3d at 316.

Here, Plaintiff does not allege a plausible claim of retaliation under Title VII or the ADA for two reasons. First, Plaintiff does not state that she engaged in any protected activity, *i.e.*, any action to protest or oppose discrimination prohibited under either Title VII or the ADA. At most, Plaintiff claims that she reported her co-worker's behavior to her supervisor. However, this reporting does not qualify as protected activity. *Jones v. NY State Metro D.D.S.*, 543 Fed. App'x. 20, 22 (2d Cir. 2013) (reporting to a supervisor that a fellow employee was sleeping on the job is not a protected activity).

Second, Plaintiff does not claim that she suffered any materially adverse employment action. Adverse actions, for purposes of a retaliation claim, are those that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) (quotations and citation omitted). Examples "include termination of employment, a demotion evidenced by a decrease in wage or salary . . . [or] significantly diminished material responsibilities . . . ." *Duplan v. City of NY*, 15-CV-4136, 2017 WL 1232473, at *6 (E.D.N.Y. Mar. 30, 2017) (citation omitted). The co-worker's allegedly bad behavior toward Plaintiff, including "cut[ting] off communication for days at a time" (Compl., at 4), does not constitute an adverse employment action under Title VII or the ADA. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable as retaliation under Title VII) (citations omitted).

In fact, Plaintiff admits that "there was no obvious retaliation for reporting" the alleged "unethical" conduct of her co-worker and that her "job was not in jeopardy at that time." (Pl. Opp'n, at 3, 6.)

Accordingly, given the absence of allegations of protected activity or adverse employment actions, Plaintiff's new claim of retaliation under Title VII or ADA must be dismissed.[3]

## II. Plaintiff's NYSDHR and NYCHRL Claims Must be Dismissed

### A. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State and City Law Claims

In light of the dismissal of Plaintiff's Title VII and ADA claims, the Court declines to exercise supplemental jurisdiction over her NYSHRL and NYCHRL claims. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (a district court's decision "whether to exercise [] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 263 (2d Cir. 2006) (the decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a litigant's right"); *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445 (2d Cir. 1998) (Courts must determine whether to continue to exercise supplemental jurisdiction "at every stage of the litigation.").

---

[3] Defendants argue that Plaintiff did not exhaust her administrative remedies with regard to her new hostile work environment and retaliation claims. The Court notes that a plaintiff cannot allege a new claim in federal court where that claim was never included in a timely administrative charge, because a district court's purview is limited to "claims that are either included in the EEOC charge or are based on conduct which is reasonably related to conduct alleged in the EEOC charge." *Fiscina v. N. Y. C. Dist. Council of Carpenters*, 401 F. Supp. 2d 345, 356 (S.D.N.Y. 2005) (quotation marks and citation omitted). Even though Plaintiff's new claims of hostile work environment or retaliation appear to be reasonably related to the claims originally brought in the complaint, the Court need not decide the question of exhaustion because of its ruling on the merits.

In any event, as discussed below, even if the Court were inclined to exercise pendent jurisdiction over these claims, they would have to be dismissed for lack of subject matter jurisdiction.

### B. The Court Does Not Have Subject Matter Jurisdiction Over Plaintiff's NYSDHR and NYCHRL Claims

Defendant argues that this Court does not have subject matter jurisdiction to hear Plaintiff's NYSHRL and NYCHRL claims because they were already adjudicated by the NYSDHR. The Court agrees.

Plaintiff filed a complaint in November 2015 with the NYSDHR alleging failure to accommodate a disability and sexual harassment. (NYSDHR Complaint, Dkt 14-2, at 2.) The NYSDHR rejected the same disability discrimination claim Plaintiff has made here, noting that Plaintiff's "request to correct a co-worker's performance is not a 'reasonable' accommodation as defined by law" and, in any event, Plaintiff was accommodated when she was granted an one-week leave of absence and the co-worker was laid off. (NYSDHR Determination, at 3.)

The NYSDHR also dismissed Plaintiff's sexual harassment claim regarding the alleged "groping" by the program participant. The NYSDHR noted that Plaintiff reported that a mentally-disabled male client "put his hand on the small of my back" and that Defendant responded by counseling the client and other program clients about appropriate behavior. (*Id.*) Defendant also "employed an outside consultant to train all staff on how to respond to inappropriate behavior by mentally disabled clients." (*Id.* at 4.) The NYSDHR concluded that "this one-time incident cannot be considered sufficiently severe, pervasive, or both, as to constitute a violation of the Human Rights Law" and that Defendant "took reasonable steps to address the behavior once informed." (*Id.*) The NYSDHR also observed that "[Defendant] took no adverse employment action against" Plaintiff. (*Id.*)

"[O]nce a plaintiff brings a case before the NYSDHR, he or she may appeal *only* to the Supreme Court of the State of New York." *York v. Ass'n. of Bar of City of NY*, 286 F.3d 122, 127 (2d Cir. 2002) (emphasis added); *see* N.Y. Executive Law § 298 (McKinney's). Plaintiff never challenged the NYSDHR's dismissal of her NYSHRL and NYCHRL claims in New York Supreme Court as required. Instead, she filed her complaint with this Court. As a result, the Court lacks subject matter jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.

## **CONCLUSION**

For the reasons stated herein, the Court grants Defendant's motion to dismiss the original complaint in this action, as well as the claims raised for the first time in Plaintiff's opposition to the motion. The Court certifies pursuant to 28 U.S.C. 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully requested to enter judgment and terminate this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 14, 2018
      Brooklyn, New York